PEOPLE v FULLWOOD

1. KIDNAPPING—ASPORTATION—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

A jury could infer from circumstantial evidence that a kidnapping-murder victim was alive when asported where the evidence included the fact that the victim, a barmaid, had left the bar open and vacant during her working hours, the absence of any sign of a struggle, particularly lack of bloodstains, a missing money box and cash register contents, an open newspaper, and the victim's purse and coat left behind; such evidence when considered against the brutal and bloody condition of the body when discovered, could support the inference that the victim was alive and taken from the bar against her will.

2. KIDNAPPING—MURDER—ASPORTATION.

Movement of a live victim any distance incidental to murder suffices to make a statutory kidnapping.

3. HOMICIDE—MURDER—ALTERNATIVE COUNTS—FELONY MURDER—PREMEDITATION—DOUBLE JEOPARDY.

A defendant charged with alternative counts of premeditated and

REFERENCES FOR POINTS IN HEADNOTES
[1] 1 Am Jur 2d, Abduction and Kidnapping § 30.
[2] 1 Am Jur 2d, Abduction and Kidnapping § 9.
  40 Am Jur 2d, Homicide § 72.
  Seizure or detention for purpose of committing rape, robbery, or similar offense as constituting separate crime of kidnapping. 17 ALR2d 1003.
[3, 5] 21 Am Jur 2d, Criminal Law § 187.
  40 Am Jur 2d, Homicide § 184.
[4] 41 Am Jur 2d, Indictments and Informations §§ 312, 313.
[6] 29 Am Jur 2d, Evidence §§ 166, 211.
  Modern status of the rules against basing an inference upon an inference or a presumption upon a presumption. 5 ALR3d 100.
[7] 40 Am Jur 2d, Homicide §§ 417–419.
  Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 159 ALR 1414, s. 73 ALR2d 769.
[8] 29 Am Jur 2d, Evidence § 320 et seq.
  40 Am Jur 2d, Homicide §§ 310, 311, 313.

felony murder was not entitled to know upon which theory the jury convicted to avoid double jeopardy because upon acquittal of first-degree murder, the defendant could not be retried under either theory.

4. INDICTMENT AND INFORMATION—DIFFERENT OFFENSES—GENERAL VERDICT.

A general verdict of guilty on an information charging alternative counts is erroneous when the offenses charged are separate and distinct in character, provable by substantially different evidence, and punishable by different penalties.

5. HOMICIDE—MURDER—ALTERNATIVE COUNTS—FELONY MURDER— PREMEDITATION—UNANIMOUS VERDICT.

A defendant charged with alternative counts of premeditated and felony murder was not entitled to know upon which theory he was convicted to insure his right to a unanimous verdict because the penalty for the two offenses, both species of first-degree murder, is the same, substantially similar evidence proves both crimes, and the charged counts are not mutually exclusive, where sufficient evidence existed to support a conviction under either count.

6. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—WEIGHT—CHAIN OF CUSTODY.

The prosecution established the chain of custody of a murder weapon found in defendant's car where the car remained at defendant's home for two hours after his arrest, was transported to a private fenced lot and remained there unlocked for nine hours, and was then transported to the police garage, because possession of the car was traced through its final custodian; a prima facie showing of identity and connection with the crime was made and the fact that the car was unlocked in the private fenced lot, and that the weapon was later discovered, are conditions affecting weight, not admissibility.

7. HOMICIDE—EVIDENCE—PHOTOGRAPHS.

Admission of a photograph of the victim in a murder trial was not error where, set in a context of a prior inferential abductor-abductee relationship, a robbery motive, transportation to a secluded location, a gunshot wound in the head, and partially burned condition of the body revealed by the photograph suggest the existence of a coherent and organized scheme before the homicide; such a photograph was substantially nec-

essary or instructive to show material facts or conditions and not merely calculated to excite passion and prejudice.

8. Homicide—Evidence—Other Offenses—Motive.

Other criminal acts material to a showing of motive are properly admissible in a homicide case; therefore, no error resulted from admitting evidence of an uncharged larceny or robbery in a murder trial where, by providing a motive, the evidence lent substance to the murder charge (MCLA 768.27).

Appeal from Wayne, John D. O'Hair, J. Submitted Division 1 January 9, 1974, at Detroit. (Docket No. 13910.) Decided March 1, 1974.

Charles M. Fullwood was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: McGregor, P. J., and J. H. Gillis and O'Hara,* JJ.

J. H. Gillis, J. A jury convicted Charles Martin Fullwood of first-degree murder. MCLA 750.316; MSA 28.548. He appeals as of right.

Police discovered Joyce Ann Tuggle's fatally wounded, partially burned body, on April 29, 1971, in a secluded location in Edward Hines Park, after receiving an informant's tip. Earlier that day she had been reported missing from a bar where she was employed as the day-shift barmaid. Her em-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ployer had observed her reading newspaper want ads before he left that morning. A delivery man last saw the victim alive, working alone, about 11:30 a.m. He also noticed a red station wagon enter the parking lot, and a stocky man of middle stature exit the car and enter the bar. Another witness reported entering the open, but vacant, bar about an hour later. The victim's husband, who stopped for lunch, reported his wife missing at 1:15 p.m. Police investigation revealed that cash register contents and a money box containing $150 including $52 in coins were missing. Mrs. Tuggle's coat and purse containing $30 were inside the bar and her car was still in the lot. There were no signs of struggle; an open newspaper, a candy bar wrapper, and glass and coaster (lacking usable fingerprints) remained on the counter.

Witnesses testified that about 4 p.m. defendant exchanged approximately $50 in coins for bills at his neighborhood store. The owner had told defendant earlier that he needed change. Defendant stated the coins were his poker winnings.

About 9 p.m. a tipster who called himself "C.A." telephoned a television news desk with a murder report. He related that he had witnessed two men murder a woman the previous evening, and gave precise directions to the body's location. The tipster subsequently contacted the police directly. Defendant, en route at a later date to the county jail, told police he was "C.A.", gave the television station's telephone number, and reiterated the identical exculpatory claim.

A barmaid testified that about 9 p.m., defendant asked for change to call police and report a dead woman's body in the park. Other witnesses testified that defendant, acting peculiarly, struck up conversations about Joyce Tuggle's disappearance

and death in local bars at 11 p.m. and 1 a.m. that evening.

Defendant, wearing a bloodstained shirt, was arrested near his home some 17 hours after the discovery of the body. A subsequent car search, pursuant to warrant, produced a .38-caliber weapon found in the air vent, a gasoline can, a clump of fibers matching similar fibers found at the scene, and human hair and blood samples matching the victim's. Experts concluded the victim was murdered elsewhere and deposited in the park. Police theorized she was murdered in the defendant's car.

Separate counts of murder in the perpetration of a kidnapping and premeditated murder were lodged against defendant. On appeal, he argues that the jury improperly considered the felony-murder count, because no evidence established that the victim was alive at the time of asportation.

The facts adduced support a kidnapping charge. *People v Adams,* 389 Mich 222, 237–239; 205 NW2d 415, 422–423 (1973). The jury could infer from circumstantial evidence that Mrs. Tuggle was alive when asported. The open and vacant bar, the absence of any sign of struggle, particularly lack of blood stains, the missing money box and cash register contents, the open newspaper, the purse and coat left behind, considered against the brutal and bloody condition of the body, support the inference that she was alive and taken from the bar against her will. *Adams, supra,* appears persuasive in this context:

"2. The movement element is not sufficient if it is 'merely incidental' to the commission of another underlying lesser crime.

"3. If the *underlying* crime involves murder * * *

*movement incidental thereto* is generally sufficient to establish a valid statutory kidnapping." *People v Adams, supra,* 238; 205 NW2d 422. (Emphasis supplied.)

Wary of resurrecting the recently interred "any movement" rule, we nevertheless think *Adams* concludes that movement of a live victim *any distance* incidental to the murder suffices to make out a valid statutory kidnapping. Applying the *Adams* test, we conclude that murder, often the consequence of the prior kidnapping, is the *underlying* crime in this transaction. The elements of kidnapping could be inferred from the circumstantial evidence here adduced. Thus, no error resulted from allowing the felony-murder charge to go to the jury.

The information, charging alternative counts of premeditated and felony murder, went to the jury. The jury returned a verdict of murder in the first degree. Defendant claims he was entitled to know upon which theory the jury convicted to insure his right to a unanimous verdict and avoid double jeopardy problems. We do not agree.

As to the jeopardy question, *Turner v Arkansas,* 407 US 366; 92 S Ct 2096; 32 L Ed 2d 798 (1972), and *People v White,* 390 Mich 245; 212 NW2d 222 (1973), dictate that upon acquittal of murder in the first degree, defendant could not be retried under either theory. Nor was defendant deprived of his right to a unanimous jury verdict. A general verdict of guilty is erroneous when the offenses charged are separate and distinct in character, provable by substantially different evidence, and punishable by different penalties. *People v Huffman,* 315 Mich 134; 23 NW2d 236 (1946); *People v Lowenstein,* 309 Mich 94; 14 NW2d 794 (1944). The penalty for felony and premeditated murder, both species of first-degree murder, is the same. Sub-

stantially similar evidence proves both crimes, except that a showing of murder in the perpetration of an enumerated felony supplies the premeditation element which the prosecution must otherwise prove. Further, the charged counts are not mutually exclusive; they can and do arise in the same transaction.

Because sufficient evidence exists to support a conviction under either count, the trial court did not abuse its discretion in denying defendant's motion for new trial.

Defendant next contends that the prosecution failed to establish the chain of custody of the murder weapon. After defendant's arrest, his car remained at his home until a police officer was dispatched to perform a cursory search. Some two hours later a private wrecker, regularly employed by the police, transported the car to a private, fenced yard where it remained unlocked until transported to the police garage nine hours later. A search pursuant to a warrant produced the weapon, hidden in an air vent. The chain of custody was established since possession of the car was traced through its final custodian. The fact that the car was unlocked while in a private fenced lot, and that the gun was later discovered, are conditions affecting weight, not admissibility. The prosecution made a prima facie showing of identity and connection with the crime. *People v Kozlow,* 38 Mich App 517; 196 NW2d 792 (1972); *People v Lyall,* 372 Mich 607; 127 NW2d 345 (1964).

Defendant alleges abuse of discretion in admitting an 8 × 10 glossy colored photograph of the deceased, taken at the murder scene. Since probative value outweighed prejudice no abuse of discretion occurred. Defendant stipulated to the condition of the body, and claimed "the wrong man" was charged as in *People v Falkner,* 389 Mich 682;

209 NW2d 193 (1973). The prosecutor contended however that the photograph was material to proving premeditation and deliberation, a consideration notably absent in *Falkner*.

We conclude that this photograph was "substantially necessary or instructive to show material facts or conditions" and not merely "calculated to excite passion and prejudice". *People v Falkner*, supra, 685; 209 NW2d 194; *People v Eddington*, 387 Mich 551; 198 NW2d 297 (1972).

*People v Morrin*, 31 Mich App 301, 333; 187 NW2d 434, 451 (1971), *lv to app den*, 385 Mich 775 (1971), wherein Judge LEVIN concluded that posthumously inflicted wounds were not probative of a rational, deliberative process before the murder, is distinguishable on various factual grounds. Set in a context of a prior inferential abductor-abductee relationship, a robbery motive, transportation to a secluded location, the gunshot wound to the head, and the partially burned condition of the body revealed by the photograph suggest the existence of a coherent and organized scheme before the homicide. Admission of the photograph was not error in these circumstances. *People v Morrin*, supra, 332; 187 NW2d 450–451; *People v Phillips*, 385 Mich 30; 187 NW2d 211 (1971).

Finally, no error resulted from admitting evidence of the uncharged larceny or robbery. By providing a motive, the evidence lent substance to the first-degree murder charge. *People v Vail*, 49 Mich App 578; 212 NW2d 268 (1973). Other criminal acts material to a showing of motive are properly admissible in a homicide prosecution. MCLA 768.27; MSA 28.1050. *People v Askar*, 8 Mich App 95; 153 NW2d 888 (1967). No abuse of discretion occurred.

Affirmed.

All concurred.