PEOPLE v CROWN

1. ARREST—HOMICIDE—PROBABLE CAUSE TO ARREST—INFORMANTS—
   APPEAL AND ERROR.

   A trial court's ruling that there was probable cause to arrest a
   defendant on a murder charge was proper where the police had
   information from an informant who was not anonymous and
   who provided the police with shell casings determined to have
   been fired from the gun used in the murders.

2. SEARCHES AND SEIZURES—SEARCH WITHOUT A WARRANT—CON-
   SENT—SUPPRESSION OF EVIDENCE.

   Evidence found in a house in which a defendant was living
   should not be suppressed on the basis that there was no
   warrant for the search where the owner of the house freely
   consented to the search and the evidence was found in rooms
   used by all the occupants.

3. CRIMINAL LAW—CAPITAL OFFENSES—JURY—PEREMPTORY CHAL-
   LENGES—JURY SELECTION—MULTIPLE COUNTS—COURT RULES—
   STATUTES.

   A defendant on trial for an offense which is punishable by death

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest § 46.
[2] 68 Am Jur 2d, Searches and Seizures § 46.
[3] 47 Am Jur 2d, Jury § 245.
[4] 5 Am Jur 2d, Appeal and Error §§ 648–650.
[5] 21 Am Jur 2d, Criminal Law § 297.
[6] 29 Am Jur 2d, Evidence § 831.
[7] 31 Am Jur 2d, Expert and Opinion Evidence § 108.
[8] 47 Am Jur 2d, Jury § 285.
[9] 47 Am Jur 2d, Jury § 13.
[10] 29 Am Jur 2d, Evidence § 264.
[11] 21 Am Jur 2d, Criminal Law § 128.
[12] 40 Am Jur 2d, Homicide § 525.
[13] 40 Am Jur 2d, Homicide § 543.
[14] 40 Am Jur 2d, Homicide § 549.
[15] 5 Am Jur 2d, Appeal and Error § 611.
[16] 40 Am Jur 2d, Homicide § 472.
[17] 47 Am Jur 2d, Jury § 140.

or life imprisonment is entitled to 20 peremptory challenges in the jury selection; this rule does not entitle a defendant in one trial for multiple capital offense counts to 20 peremptory challenges for each such count (GCR 1963, 511.5, MCLA 768.13; MSA 28.1036).

4. WITNESSES—CRIMINAL LAW—IMMUNITY FROM PROSECUTION.

A defendant's contention that the trial court failed to follow the statutory procedure for granting a witness immunity from prosecution is without merit where the defendant cites no statutory requirement that was not met.

5. CRIMINAL LAW—SCENE OF CRIME—JURY VIEW—DISCRETION OF TRIAL JUDGE.

It is for the trial judge to decide whether or not to grant a request for a jury view of the scene of a crime; where the judge gave cogent reasons for denying such a request, no abuse of discretion is shown.

6. EVIDENCE—POLYGRAPH TEST RESULTS—WITNESSES—HOMICIDE.

Polygraph tests are inadmissible as evidence; therefore, it was not error for a trial court to quash subpoenas of witnesses which the defense sought to examine before the jury on the results of polygraph tests of an uncharged "confessor" of the murders with which the defendant was charged.

7. WITNESSES—CRIMINAL LAW—EXPERT WITNESSES—FINDINGS OF EXPERT—APPEAL AND ERROR.

Allowing the prosecution to examine a defense expert concerning the expert's findings was harmless error, if error at all, where there was no prejudice to the defendant.

8. CRIMINAL LAW—INSTRUCTIONS TO JURY—EVIDENCE—CREDIBILITY—ACCOMPLICES—APPEAL AND ERROR.

A trial judge's instructions to a jury relating to the credibility of an accomplice who had been granted immunity from prosecution were not improper where the substance of the instructions requested by a defendant was given, although not in the exact language requested.

9. CRIMINAL LAW—INSTRUCTIONS TO JURY—COMMON SCHEME—APPEAL AND ERROR.

The failure of a trial judge *sua sponte* to instruct a jury on the use of common scheme testimony was not error where there was no request for the instruction at the close of the proofs, there was no objection to the admission of the testimony, and

there was no prejudice to the defendant in the trial court's failure to give the instruction.

10. Criminal Law—Instructions to Jury—Aiding and Abetting.

An instruction to the jury on a defendant's potential guilt as an aider and abettor is not improper where the evidence introduced at trial supports the theory that the defendant aided in the crime as well as the theory that the defendant acted alone.

11. Homicide—First-Degree Murder—Second-Degree Murder—Instructions to Jury—Lesser Included Offenses.

A trial court must instruct the jury on second-degree murder in every first-degree murder case, even absent a request for such an instruction, because second-degree murder is a necessarily lesser included offense of first-degree murder.

12. Homicide—First-Degree Murder—Manslaughter—Instructions to Jury—Appeal and Error.

The failure to instruct the jury on manslaughter in a first-degree murder case is not error absent a request for such an instruction.

13. Homicide—Felony Murder—Second-Degree Murder—Inconsistent Jury Verdicts—Enumerated Felony.

Jury verdicts in a homicide case which find a defendant guilty of a count of felony murder and not guilty of a count of second-degree murder arising out of the same killing are reversibly inconsistent because felony murder is second-degree murder with the additional element of the perpetration of or attempt to perpetrate an enumerated felony.

14. Homicide—First-Degree Murder—Sentences—Double Punishment.

It is improper to give a defendant two life sentences for the commission of one crime of first-degree murder.

15. Witnesses—Criminal Law—Res Gestae Witnesses—New Trial—Preserving Question—Appeal and Error.

A defendant who has been convicted of a crime and later claims that the trial court's failure to endorse a certain person as a res gestae witness must make a motion for a new trial raising such an issue or the issue will not be preserved for appeal; a defense motion for a new trial which does not address this issue does not preserve the issue for appeal.

16. Homicide—Premeditation—Jury Question.

The issue of whether or not there was premeditation in a homi-

cide case tried before a jury is one for the jury to determine where there are sufficient circumstances surrounding the killing from which premeditation could be inferred to submit the question to the jury.

17. JURY—SELECTION OF JURORS—PEREMPTORY CHALLENGES—JUROR POOL.

A defendant's motion for a mistrial claiming that the jury selection procedure was improper because the trial judge indicated that more jurors would be called if needed was properly denied where none were needed because the defense ran out of peremptory challenges while there were still jurors left in the original pool.

Appeal from Ingham, James T. Kallman, J. Submitted March 3, 1977, at Lansing. (Docket No. 26131.) Decided April 19, 1977. Leave to appeal applied for.

John T. Crown was convicted of two counts of felony murder and one count of premeditated murder. Defendant appeals. Affirmed in part and reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *Lee W. Atkinson,* Chief Appellate Attorney, for the people.

*Weed & Weed, P. C.,* for defendant.

Before: DANHOF, C. J., and T. M. BURNS and J. E. MCDONALD,* JJ.

PER CURIAM. The parties submit the following agreed statement of facts:

"On January 1, 1975, the body of Lawrence Olson was discovered along with that of his wife, Edith Olson, in the front yard of their home at 1824 Cadillac Drive in the Township of Lansing, County of Ingham, State of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Michigan. Lawrence Olson was dead at the scene of two gun shot wounds to the head. Edith Olson was taken to a local Lansing hospital where she died on February 4, 1975.

"On March 28, 1975, the Defendant John Crown was arrested by the Lansing Police and charged with the murder of Lawrence and Edith Olson.

"On March 31, 1975, and April 2, 1975, 6013 Selfridge Boulevard, was searched by the State Police without a warrant and various items were seized for evidence.

"On April 10, 1975, a preliminary examination was conducted in the Mason District Court of Ingham County. Rudolf Castelli who had also been charged with the murder of the Olsons testified at the examination in return for complete immunity on the Olson murders and breaking and entering.

"Castelli testified at the preliminary examination and at the trial regarding his actions with the Defendant on December 31, 1974, and January 1, 1975. Castelli testified that he, the Defendant and a man named Hutch had gone out on New Year's Eve, December 31, 1974, to break and enter various homes, driving Hutch's car. He further testified that the three of them burglarized one home, which was identified as the Courser home, and then continued on to the Olson home. Castelli admitted to possessing a .22 revolver and the Defendant had a .22 derringer.

"Witness Castelli then testified that while he and the Defendant were participating in a breaking and entering of the Olson home, the Olsons pulled in their driveway and blocked in Hutch's car. Castelli further testified that he knocked Lawrence Olson down, and struck him with the gun he had and then backed the Olson car out on the street. Castelli left the Olson car on the street and walked up by the garage and testified that the Defendant and Hutch were standing near Lawrence Olson, who was on the ground. He testified that he had a conversation with the Defendant and Hutch and then left the scene and drove away the Olson car. Castelli then testified that after he emptied Edith Olson's purse, he met the Defendant, Hutch,

Shirley Curtis, the girl friend of the Defendant, and Sandy Howe at the Cozy Lounge in the City of Lansing.

"The Defendant was subsequently bound over to stand trial and after a series of pretrial motions, including a motion for change of venue, trial commenced on July 14, 1975, in Traverse City, Grand Traverse County, Michigan.

"The jury found the Defendant guilty of Count I, felony murder of Lawrence Olson, Count II, felony murder of Edith Olson, and Count III, premeditated murder of Lawrence Olson. The jury acquitted the Defendant of the premeditated murder of Edith Olson."

On September 17, 1975, defendant was sentenced to three terms of life imprisonment.

In this appeal as of right defendant makes 22 assignments of error on the part of the trial court. We discuss them *seriatim.*

1. The trial court did not err in ruling that there had been probable cause to arrest the defendant. *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971), is inapposite. Not only was the informant not anonymous, but he provided the police with shell casings determined to have been fired from the gun used in the murders. Better physical evidence corroborating the informant's statement is difficult to imagine.

2. The trial court did not err in denying defendant's motion to suppress evidence taken in warrantless searches of the house in which defendant was living. The owner of the house, Mrs. Howe, freely consented to the search, by her own testimony. The evidence used at trial was found in rooms used by all the occupants. See *People v Chism,* 390 Mich 104, 134–137; 211 NW2d 193 (1973).

3. The trial judge did not err in denying defendant's motion to require the prosecution to elect

between the charges of felony murder and premeditated murder. See *People v Fullwood,* 51 Mich App 476; 215 NW2d 594 (1974).

4. The trial court did not err in denying defendant's motion to be permitted 20 peremptory challenges for each of the four capital counts. See GCR 1963, 511.5, MCLA 768.13; MSA 28.1036.

5. There is no merit to the contention that the trial court failed to follow the statutory procedure for granting immunity from prosecution to a witness. Defendant cites no statutory requirement that wasn't met.

6. The trial court did not abuse its discretion in denying defendant's motion for a jury view. Such questions are for the trial judge to decide. MCLA 768.28; MSA 28.1051. Where, as here, the judge gave cogent reasons for denying the request, an abuse of discretion cannot be said to have occurred. See *People v Curry,* 49 Mich App 64; 211 NW2d 254 (1973).

7. The trial court did not err in quashing the subpoenas of the witnesses sought to be examined before the jury on the results of polygraph examinations of an uncharged "confessor" to the murders. Such evidence is inadmissible. *People v Frechette,* 380 Mich 64; 155 NW2d 830 (1968). This rule cannot be "updated" without a factual record upon which to reevaluate the rule. As an aside, we question the relevance of the truthfulness of the confessor's belief that he committed the murders.

8. Defendant cites no authority for the proposition that it was error to allow the prosecutor to examine a defense expert concerning his findings. Even if the facts could be stretched to bring this episode under the work product rule of *United States v Nobles,* 422 US 225; 95 S Ct 2160; 45 L Ed 2d 141 (1975), we can envision no prejudice to the

defendant arising from the ruling. No mention was made of the witness's retention by the defense and the testimony was not unfavorable to the defense.

9. The trial court did not err in refusing to declare a mistrial when a witness described a *Miranda* rights form as having defendant's signature on it. We can add nothing to the trial court's well considered opinion on the question. There was, quite simply, no prejudicial error.

10. The trial court did not err reversibly in ruling that no prior convictions for felonies occurring more than ten years prior to trial would be admissible to impeach the credibility of witnesses. Defendant's argument that rules for impeachment of witnesses should be different from those relating to impeachment of the accused is answered by existing precedent. See *People v Falkner,* 389 Mich 682; 209 NW2d 193 (1973), *People v Sesson,* 45 Mich App 288; 206 NW2d 495 (1973), *People v James,* 36 Mich App 550; 194 NW2d 57 (1971).

11. There was no error in the jury instructions relating to the credibility of an accomplice who had been granted immunity from prosecution. The substance of the instructions requested by defendant was given, albeit not in the exact language requested. The requirements of *People v Love,* 43 Mich App 608; 204 NW2d 714 (1972), if applicable to the instant case, were met.

12. The trial court did not err in failing to *sua sponte* reinstruct the jury on the use of "common scheme" testimony. There was no request for the instruction at the close of the proofs, there was no objection to its omission, and there was no prejudice in the trial court's failure to give it.

13. The trial court did not err in instructing on defendant's potential guilt as an aider and abettor. The evidence introduced at trial supported the

theory that defendant aided in the shooting of either or both of the Olsons, as well as the theory that he alone did the shootings. *People v Lamson,* 44 Mich App 447; 205 NW2d 189 (1973), controls.

14. The trial court did not err in not instructing the jury on lesser included offenses on the felony-murder counts.

None of the defendant's proposed instructions dealt with lesser included offenses to felony murder. Defendant objected to the murder instructions only insofar as they defined premeditation. Effective January 1, 1976, in every first-degree murder case the trial court must instruct on second-degree murder, even absent a request, as second-degree murder is a necessarily lesser included offense. *People v Jenkins,* 395 Mich 440, 443; 236 NW2d 503 (1975), *People v Carter,* 395 Mich 434, 437; 236 NW2d 500 (1975), *People v Ora Jones,* 395 Mich 379, 390; 236 NW2d 461 (1975), *People v Henry,* 395 Mich 367, 374; 236 NW2d 489 (1975). The failure to instruct the jury on manslaughter in a first-degree murder case is not error absent a request for such an instruction. *People v Henry, supra.*

The trial in the case at bar occurred in 1975 prior to the effective date of the above rule concerning second-degree murder.

15. Defendant is correct in arguing that the findings of the jury were, in part, reversibly inconsistent.

The information charged defendant with four counts of first degree murder:

Count 1—felony murder of Mr. Olson

Count 2—felony murder of Mrs. Olson

Count 3—premeditated murder of Mr. Olson

Count 4—premeditated murder of Mrs. Olson.

The jury was instructed on all four counts. They

were told that they had two possible verdicts as to felony murder of Mrs. Olson, guilty or not guilty. On Count 4, premeditated murder of Mrs. Olson, the jury was instructed on lesser included offenses, including second-degree murder and manslaughter.

The jury returned a verdict of guilty on Counts 1, 2 and 3. They found defendant *not guilty* on Count 4. The obvious inconsistency is in finding defendant guilty of felony murder of Mrs. Olson (Count 2) but not guilty of premeditated murder, second-degree murder or manslaughter of Mrs. Olson (Count 4).

Felony murder is second-degree murder with the additional element of the perpetration or attempt to perpetrate an enumerated felony. *People v Carter, supra* at 437. On Count 2, then, the jury, in effect, found defendant guilty of second-degree murder in the killing of Mrs. Olson. On Count 4, the jury found defendant *not* guilty of second-degree murder in the killing of Mrs. Olson. Being inexplicably inconsistent with the verdict on Count 4, the verdict of guilty on Count 2 cannot stand. *People v Goodchild,* 68 Mich App 226, 237; 242 NW2d 465 (1976). See, Anno: *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information,* 18 ALR3d 259, 282.

16. Defendant is correct in arguing that the trial court erred in sentencing him to three life sentences.

Since the verdict of guilty of felony murder of Mrs. Olson cannot stand, the sentence on that count must be vacated.

It was also improper to give defendant two life sentences for the commission of one crime, the first-degree murder of Mr. Olson. See *People v Carter, supra, People v Goodchild, supra,* at 236,

237. One of the life sentences given for the murder of Mr. Olson must be vacated.

17. We assign no error to the trial court's denial of defendant's motion to dismiss based upon the failure to endorse Gerry Ward as a res gestae witness.

Defendant's motion for a new trial was not based in any part upon the res gestae witness question. The issue thus is not preserved for appeal. *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973). Moreover, it was not shown at trial nor does it appear from the instant record that Gerry Ward was either an alibi witness or a res gestae witness.

18. It was not error to deny defendant's motion for a directed verdict on the premeditated murder counts. Whether there was premeditation or not was for the jury to determine. There was more than enough evidence of the circumstances surrounding the killing from which premeditation could reasonably be inferred to sustain the verdict of guilty beyond a reasonable doubt let alone sufficient to submit the question to the jury. See *People v Meier,* 47 Mich App 179; 209 NW2d 311 (1973).

19. The trial court's instructions to the jury, while extensive, were properly set forth with no undue emphasis or repetition.

20. The issue concerning failure to instruct on intervening cause of Mrs. Olson's death is moot.

21. The issue concerning denial of defendant's motion to require the prosecutor to elect which counts would go to the jury has been answered *supra.*

22. The trial court did not err in denying defendant's motion for a mistrial because of the jury selection procedures. The trial judge indicated that

more jurors would be called if needed. They were not needed. Defendant ran out of peremptory challenges while there were still jurors left in the original pool. There was no violation or prejudice.

Defendant's conviction of the felony murder of Mrs. Olson is reversed. Defendant's convictions of the felony murder and premeditated murder of Mr. Olson are affirmed.

Defendant's life sentence for the felony murder of Mrs. Olson is reversed and vacated. Defendant's life sentence for the felony murder of Mr. Olson is reversed and vacated. Defendant's life sentence for the premeditated murder of Mr. Olson is affirmed.