PEOPLE v WILLIAM RAMSEY

PEOPLE v FAULKNER

Docket Nos. 77-3459, 77-3460. Submitted February 20, 1979, at Detroit.—Decided March 20, 1979. Leave to appeal applied for.

William G. Ramsey and Roy F. Faulkner were each convicted of felony-murder during the commission of a rape and of premeditated murder, the Recorder's Court for the City of Detroit, Michael J. Connor, J. Both defendants received two life sentences and both appeal. *Held:*

1. The trial court did not err in denying defendant Ramsey's request to be appointed his own co-counsel. In general, a defendant must choose between his right to court-appointed counsel and his right to conduct his own defense.

2. It was not error to send the felony-murder and the premeditated murder counts to the jury. The prosecutor did not have to select which count was to go to the jury and double jeopardy was not violated since defendants could ultimately be convicted only on one count.

3. There was sufficient evidence on which to find a rape.

4. The jury found defendants guilty on both counts and the court sentenced each defendant on both counts. Two convictions for a single killing violated double jeopardy.

5. There was a sufficient foundation laid for admitting a gun as evidence and for the court to be satisfied in reasonable probability that the weapon was the same one originally seized and initialed by a police officer. Any breaks in the custodial chain of the gun would go to the weight of the evidence rather than to its admissibility.

6. The trial court did not abuse its discretion in prohibiting

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 310.

[2, 4] 21 Am Jur 2d, Criminal Law § 189.

[3, 4] 40 Am Jur 2d, Homicide § 72.

[5] 30 Am Jur 2d, Evidence §§ 774, 1080.

[6] 81 Am Jur 2d, Witnesses § 475.

[7] 17 Am Jur 2d, Continuance § 27.

certain cross-examination into the credibility of the prosecution's chief witness.

7. There was no abuse of discretion in the trial court's denial of defendants' request for a continuance to enable them to obtain the presence of an out-of-state witness.

Defendants' convictions and sentences for felony-murder are reversed and vacated. The convictions and sentences for premeditated murder are affirmed.

1. CRIMINAL LAW — ASSISTANCE OF COUNSEL — STANDBY COUNSEL — COURT APPOINTED COUNSEL.
It is appropriate at times to appoint a standby counsel to assist a criminal defendant who represents himself; however, a defendant must generally choose between his right to court-appointed counsel and his right to conduct his own defense.

2. HOMICIDE — CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE COUNTS OF MURDER.
A trial court did not place a criminal defendant in double jeopardy by submitting to a jury two separate counts of murder based on one killing where the defendant could ultimately be convicted only on one count; the prosecutor does not have to select which of the two counts to submit to the jury.

3. RAPE — EVIDENCE — FELONY-MURDER — APPEAL AND ERROR.
Sufficient evidence on which to find a rape was presented in a trial for felony-murder during the commission of a rape where the evidence shows the victim was found with her coat on, her skirt pulled up around her waist, her top open, her underwear pulled off of one leg and half off the other, and there is evidence of sexual intercourse.

4. HOMICIDE — DOUBLE JEOPARDY — SINGLE KILLING.
It is double jeopardy to convict and sentence a defendant both on a count of felony-murder during the commission of a rape and on premeditated murder where there has been a single killing.

5. CRIMINAL LAW — EVIDENCE — ADMISSIBILITY — CHAIN OF CUSTODY — WEIGHT OF EVIDENCE.
A sufficient foundation was presented to satisfy a trial court in reasonable probability that a gun seized by a police officer was the same gun submitted as evidence and thereby overcome the defendant's objections to its admission on the basis of gaps in the chain of custody where the police officer testified at trial, and the gun contains initials scratched on it by the officer and

the same serial number; any breaks in the custodial chain go to the weight of the evidence rather than to its admissibility.

6. WITNESSES — CRIMINAL LAW — CROSS-EXAMINATION — COURT'S DISCRETION — COLLATERAL ISSUES — CREDIBILITY.

It is within a trial court's discretion to put a halt to questioning on a collateral issue during cross-examination into the credibility of a prosecutor's chief witness.

7. CONTINUANCES — CRIMINAL LAW — TRIAL — WITNESSES — COURT'S DISCRETION.

The granting of a continuance to enable a defendant to obtain the presence of an out-of-state witness is within the discretion of the trial court.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Frank J. Bernacki,* Assistant Prosecuting Attorney, for the people.

*Lander C. McLoyd,* Assistant State Appellate Defender, for defendants on appeal.

Before: ALLEN, P.J., and R. B. BURNS and N. J. KAUFMAN, JJ.

PER CURIAM. Defendants were charged in a two-count information with felony-murder during the commission of a rape, MCL 750.316; MSA 28.548, and premeditated murder, MCL 750.316; MSA 28.548. A jury returned a guilty verdict on June 13, 1977, but whether the verdict covered both counts or only felony-murder is one of several issues in this appeal. Both defendants received two life sentences and now appeal of right.

Donna DeFoe was killed by a bullet shot from close range through the back of her head on the night of October 28, 1975, or the early morning October 29, 1975. Defendants were arrested on an unrelated charge on November 23, 1975. A .38 Colt

Cobra was seized from the car in which defendants were riding at the time of their arrest. In March, 1976, Sterling Brown, the prosecution's principal witness, informed police that the defendants had previously told him about killing a woman. The gun seized when defendants were arrested in November, 1975, was test fired and found to be the weapon that killed DeFoe. For several reasons, including defendants' trial on another criminal charge, their trial in the instant case did not begin until May 31, 1977.

Neither defendant testified at trial. Defendant Faulkner presented an extensive alibi defense in which testimony indicated he was playing cards with friends at the time the killing occurred. The defense presented by both defendants tended to show that Sterling Brown actually committed the murder.

A few days before the trial commenced defendant Ramsey requested to be appointed as his own co-counsel. Ramsey told the court he was very pleased that he had his particular counsel, but wanted to be co-counsel in order to talk to witnesses and perhaps make opening and closing statements. The court denied Ramsey's request. The Supreme Court has recognized that at times a "standby counsel" may be appropriate to assist a defendant who represents himself. *Faretta v California,* 422 US 806, 834-835, fn 46; 95 S Ct 2525; 45 L Ed 2d 562 (1975). *Cf.* Chief Justice Burger's concurrence in *Mayberry v Pennsylvania,* 400 US 455, 467-468; 91 S Ct 499; 27 L Ed 2d 532 (1971). However, these cases do not stand for the proposition that a defendant has a right to share trial defense responsibilities with an attorney.[1] In gen-

---

[1] Although such a situation might be appropriate in some cases, the administrative difficulties inherent in such a scheme are apparent.

eral, a defendant must choose between his right to court-appointed counsel and his right to conduct his own defense. *People v Joines,* 46 Mich App 427, 430; 208 NW2d 193 (1973), *rev'd on other ground on remand* 55 Mich App 334; 222 NW2d 230 (1974). There was no error in the court's denial of defendant Ramsey's request.

As mentioned, defendants were charged with two counts of premeditated murder and felony-murder. The court instructed the jury on both counts. Defendants contend that they were twice placed in jeopardy by the submission to the jury of two separate counts of murder based on one killing. There was no error in sending both counts to the jury. The prosecutor did not have to select which count was to go to the jury, *People v Crown,* 75 Mich App 206, 211-212; 254 NW2d 843 (1977), and double jeopardy was not violated since defendants could ultimately be convicted only on one count. *People v Fullwood,* 51 Mich App 476, 481; 215 NW2d 594 (1974).

Relying on *People v Crown,* 75 Mich App 206, 214-215; 254 NW2d 843 (1977), defendants argue that a verdict of guilty on the felony-murder count but not guilty on the premeditated murder count is reversibly inconsistent. Using the analysis in *People v Crown, supra,* defendants reason that since second-degree murder is a lesser included offense of both felony-murder and premeditated murder, an acquittal on a premeditated count and a conviction on a felony-murder count also means an acquittal on an underlying second-degree count as well as a conviction on an underlying second-degree count. Hence, defendants conclude the verdict is internally inconsistent.

In this case we do not reach defendants' conclusion because we differ with defendants' initial

premise, *i.e.,* that the jury reached an acquittal on one count and a conviction on the other.[2] When the jury returned its verdict there was some confusion in the proceedings. The foreman variously announced the guilty verdict as follows:

"Murder in the first degree, felony, murder, rape." and "Murder in the first degree, criminal felony, rape."

The court then asked the jurors if they found defendants "guilty of murder in the first degree, guilty of murder in the first degree and guilty of murder in the course of a felony murder". After the jurors indicated they did, the jury was polled. There was some confusion as to how the clerk should phrase the question to the jurors in polling them. The court explained that first-degree felony-murder was just one of the two counts before the jury. The clerk eventually phrased the question in terms of whether the defendants were found "guilty of first degree murder and murder felony rape". There was never any objection to the questioning and the verdict was accepted.

We disagree with defendants' interpretation of the record on appeal. At all times during the trial it was clear there were two counts before the jury. The jury was instructed on both counts. It is reasonable to find that the jurors returned a guilty verdict on both counts, although through a poor choice of words. The questions by the court and the clerk focused on two counts, rather than being a redundantly worded question just on the felony-murder count. The clerk's use of "first degree murder" referred to the premeditated count.

---

[2] In its brief the prosecution agreed with the defense that the jury returned a verdict of guilty of felony-murder only, but then disagreed with the rest of defendants' analysis. At oral argument, however, the prosecution argued alternatively that the jury returned a guilty verdict on both counts.

If defendants' position were correct it would have resulted in a verdict on just one count when all parties involved knew two counts were involved, with nobody, including the court, inquiring as to the decision on the second count. It would be highly irregular for the court not to make such an inquiry. We are further convinced that the jury's decision was guilty on both counts because defendants were sentenced, without objection, on both counts. This indicates that the court, counsel and defendants believed the jury had returned a guilty verdict on both counts.[3]

Defendants also suggest that there was insufficient evidence to support the felony-rape count, and since one of the two theories that went to the jury in this allegedly general verdict case was unsound, the decision must be set aside. Defendants cite *Stromberg v California,* 283 US 359; 51 S Ct 532; 75 L Ed 1117 (1931). In the instant case, however, we have found that the jury returned a verdict on each count rather than a general verdict. We also find there was ample evidence on which to find a rape. *People v Olsson,* 56 Mich App 500; 224 NW2d 691 (1974). The victim was found lying in an alley with her coat on. Her skirt was pulled up around her waist and her top was open. Her underwear had been pulled off of one leg and was half off of the other. And there was evidence of sexual intercourse. This was sufficient evidence from which the jury could find a rape.[4]

---

[3] Our conclusion does not require us to reach the analysis of *People v Crown, supra.* We do note that significant concerns arise under the case. It is well established that a case can go to the jury on both felony-murder and premeditated murder counts. It is just as well established that double jeopardy bars more than one conviction. The question arises as to just what the jury's verdict should be. It seems somewhat anomalous not to permit the jury to return a not guilty verdict on one count and a guilty verdict on another when that is precisely the factual decision before it.

[4] There was also considerable evidence on which to find premedi-

In sum, we find that the jury found defendants guilty on both counts and the court sentenced each defendant on both counts. Two convictions for the single killing violated double jeopardy, therefore, we reverse and vacate the sentence and conviction of each defendant on the felony-murder count. *People v Hall,* 83 Mich App 632, 637; 269 NW2d 476 (1978), *People v Crown,* 75 Mich App 206, 215-216; 254 NW2d 843 (1977).

Defendants next point to certain gaps in the chain of custody of the gun and argue that it should not have been admitted. Part of the foundation for admitting the gun was the testimony of the officer who originally seized the gun, that the gun being admitted had the same serial number as the gun he seized as well as having his own initials scratched on it. This was sufficient for the court to be satisfied in reasonable probability that the weapon was the same. *People v Beamon,* 50 Mich App 395, 398-399; 213 NW2d 314 (1973). Any breaks in the custodial chain would go to the weight of the evidence rather than to its admissibility. *People v Fullwood,* 51 Mich App 476, 482; 215 NW2d 594 (1974).

Defendants contend it was error for the court to prohibit certain cross-examination into the credibility of the prosecution's chief witness, Sterling Brown. There is no question that the veracity of the various witnesses was crucial in this case. The cross-examination of Sterling Brown was extensive. He was shown to have an extensive criminal record including a conviction for "impersonating"

---

tated murder. The deceased was shot with a pistol at close range in the back of the head, probably while she was kneeling. She was a known prostitute, but at the time of the discovery of the body there was no identification or money on it. As a comment on the preceding issue in the body of the opinion, this case seems very appropriate for a jury decision on whether the murder was premeditated or in the course of a rape.

a lawyer and managing to get himself admitted to the bar of the Sixth Circuit Court of Appeals. Eventually the prosecutor objected to continued questioning on, *inter alia,* instances of Brown's lying to an attorney, and the objection was sustained. It was in the court's discretion to put a halt to questioning on the collateral issue. *Lehr v Rogers,* 16 Mich App 585; 168 NW2d 636 (1969). MRE 608(b). Defense counsel was permitted, and did, elicit the fact that Brown perjured himself to obtain admission to the sixth circuit bar. There was no error here.

Defendants cite three instances during the course of the trial which they construe to be attempts by the prosecutor to impermissibly impeach defendants with prior convictions or other criminal activity. Such impeachment by the prosecutor might well create error, though not automatically so. *People v Andrews #1,* 52 Mich App 719, 721; 218 NW2d 379 (1974). However, there was no error here since none of the incidents brought out past convictions or other criminal conduct. Defense objections were sustained in each instance before the information was revealed. Furthermore, in the first instance the court (which found the question to require speculation by the witness) instructed the jury to disregard the question; in the second instance defense counsel refused a cautionary instruction and, in the third instance, a cautionary instruction was given.

Finally, defendants argue that it was error to refuse their request for a continuance (and money) to enable them to obtain the presence of an out-of-state witness, defendant Ramsey's uncle, who allegedly would testify that the murder weapon was in the control of Sterling Brown at the time of the murder. The granting of such a continuance is

addressed to the discretion of the trial court. *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972), *People v Joines,* 46 Mich App 427; 208 NW2d 193 (1973), GCR 1963, 503.2. There was no abuse of discretion here. Defendants knew that possession of the weapon was an important factor from the time they were arrested in April, 1976. The trial was not held until June, 1977, and even then, the issue was not raised until the middle of the eighth day of trial. In addition, there was other defense testimony indicating the gun was in Brown's possession at the time of the murder, which would largely make the additional testimony cumulative.

The defendants' convictions and sentences for felony-murder are reversed and vacated. The convictions and sentences for premeditated murder are affirmed.