PEOPLE v BOOKER (AFTER REMAND)

Docket Nos. 117973, 147466. Submitted September 15, 1994, at Detroit. Decided December 20, 1994, at 9:15 A.M. Leave to appeal denied, 448 Mich 909.

Albert Booker, Jr., was convicted in the Macomb Circuit Court, Frank E. Jeanette, J., of voluntary manslaughter, possession of a firearm during the commission of a felony, and possession of a short-barreled shotgun and was sentenced to concurrent prison terms of seven to fifteen years for voluntary manslaughter and two to five years for possession of a short-barreled shotgun, and to a consecutive term of two years for felony-firearm. The defendant, originally charged with first-degree murder, felony-firearm, and possession of a short-barreled shotgun, appealed, claiming that the trial court erred in accepting the jury's verdict after the foreperson, when polled, expressed personal indecision over whether the manslaughter was voluntary or involuntary. The defendant also challenged his sentences and the constitutionality of having Judge Jeanette, a retired seventy-nine-year old judge, preside over the trial. The Court of Appeals remanded for resentencing. On remand, the trial court imposed the same sentences. The defendant filed a separate appeal based on the resentencing. The appeals have been consolidated.

After remand, the Court of Appeals held:

·1. The trial court erred in failing to order further deliberations by the jury when the foreperson expressed doubt concerning the category of the manslaughter conviction.

2. A general verdict of manslaughter could not be accepted in

REFERENCES

Am Jur 2d, Criminal Law §§ 256, 264, 277; Judges §§ 248, 251; Trial §§ 1743, 1772, 1826; Weapons and Firearms §§ 7, 7.5.

Juror's reluctant, equivocal, or conditional assent to verdict, on polling, as ground for mistrial or new trial in criminal case. 25 ALR3d 1149.

·Double jeopardy: various acts of weapons violations as separate or continuing offense. 80 ALR4th 631.

Supreme Court's views as to application, in state criminal prosecutions, of double jeopardy clause of Federal Constitution's Fifth Amendment. 95 L Ed 2d 924.

this case because, even though MCL 750.321; MSA 28.553 provides for one degree of manslaughter and permits the same punishment for voluntary or involuntary manslaughter, the offenses are separate and distinct, are provable by substantially different evidence, and involve different degrees of culpability and severity of punishment.

3. Double jeopardy precludes retrial of the defendant on charges of first- and second-degree murder because the verdict of guilty of voluntary manslaughter represented acquittal of murder. Retrial on the charges of voluntary manslaughter and felony-firearm is not precluded by double jeopardy in view of the manifest necessity of a declaration by the Court of Appeals of a mistrial because the jury lacked unanimity on the verdict of voluntary manslaughter.

4. The trial court did not err in denying a request for a jury instruction on duress as a defense to the charge of possession of a short-barreled shotgun. The defendant failed to present sufficient evidence to support such an instruction.

5. Convictions of both possession of a short-barreled shotgun and felony-firearm do not violate the constitutional prohibition against double jeopardy where, as here, the possession offense does not serve as the underlying felony for the felony-firearm conviction.

6. The assignment of Judge Jeannette did not violate the state constitution. Although Const 1963, art 6, § 19 provides that no person may be elected or appointed to a judicial office after reaching the age of seventy years, Const 1963, art 6, § 23, which governs the assignment of former judges to judicial duties for limited periods or specific assignments, does not contain an age restriction.

Affirmed in part, reversed in part, and remanded.

1. CRIMINAL LAW — JURY — POLLING OF JURY.

If a juror expresses disagreement with a verdict when polled, the trial court may discontinue the poll and order further deliberations by the jury or declare a mistrial and discharge the jury with the consent of the defendant or after determining that the jury is deadlocked or that manifest necessity exists for declaring a mistrial (MCR 2.512[B][3], 6.420[C]).

2. HOMICIDE — MANSLAUGHTER — JURY — VERDICTS.

A jury, in returning a verdict of manslaughter, must specify whether the conviction is for voluntary or involuntary manslaughter because the offenses are separate and distinct, are provable by substantially different evidence, and involve different degrees of culpability and severity of punishment.

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

　　Double jeopardy does not preclude retrial after discharge of a
　　jury for inability to agree or for some other overruling neces-
　　sity.

4. WEAPONS — DOUBLE JEOPARDY — FELONY-FIREARM — POSSESSION
　　OF SHORT-BARRELED SHOTGUN — CRIMINAL LAW.

　　The Legislature intended to authorize multiple convictions for
　　felony-firearm and possession of a short-barreled shotgun where
　　a different offense is used as the underlying felony for the
　　felony-firearm conviction (MCL 750.224b, 750.227b; MSA
　　28.421[2], 28.424[2]).

5. JUDGES — ASSIGNMENT OF FORMER JUDGES.

　　Former judges, regardless of age, may be assigned by the Su-
　　preme Court to perform judicial duties for limited periods or
　　specific assignments; the age limit of no more than seventy
　　years that applies to the election or appointment of judges does
　　not apply to the assignment of former judges (Const 1963, art 6,
　　§§ 19, 23).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Robert J. Berlin,* Chief Appellate Lawyer, and *Edward L. Graham,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Anne Yantus*), and *Madelaine P. Lyda,* for the defendant on appeal.

AFTER REMAND

Before: SAWYER, P.J., and FITZGERALD and T. S. EVELAND,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of voluntary manslaughter, MCL 750.321; MSA 28.553, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and possession of a short-barreled shotgun, MCL 750.224b; MSA 28.421(2). Defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

was sentenced to concurrent prison terms of seven to fifteen years for voluntary manslaughter and two to five years for possession of a short-barreled shotgun, and to a consecutive prison term of two years for the felony-firearm conviction. Following a remand by this Court for resentencing, defendant was resentenced to identical terms. The cases were consolidated on appeal. Defendant appeals as of right.

Defendant was originally charged with first-degree, premeditated murder, MCL 750.316; MSA 28.548, felony-firearm, and possession of a short-barreled shotgun as a result of the shooting death of Eddie Calvert. Following six days of trial, the jury returned guilty verdicts of voluntary manslaughter, possession of a short-barreled shotgun, and felony-firearm after five hours of deliberation. When the jury was polled, the foreperson expressed doubt regarding whether the verdict should be voluntary or involuntary manslaughter.[1] After concluding the polling, the trial court excused the jury and later questioned the juror regarding the nature of her doubt. Defense counsel objected to the trial court's conduct and requested a mistrial based on the lack of a unanimous jury. The trial court denied the motion, accepted the verdict, and discharged the jury on January 27, 1989.

[1] Juror No. 254, the foreperson, stated: "I have doubt" [regarding the voluntary manslaughter verdict] because "I think it could possibly be involuntary manslaughter." Juror No. 254 stated that her doubt was "whether it was a voluntary action or an involuntary action." In response to the trial court's question whether she had any doubt that she voted for manslaughter, the jury foreperson stated: "I did vote for manslaughter." The trial court then asked: "But the verdict said voluntary manslaughter. Was this not unanimous?" Juror No. 254 responded: "I did vote for that. Yes, I did." When the trial court again asked her whether her verdict was guilty on all three counts, Juror No. 254 stated "Yes. I did vote that way." The trial court then sent the jury back to the jury room, whereupon defense counsel asked for a mistrial because there was not a unanimous verdict.

On February 8, 1989, defendant moved for dismissal. On February 12, 1989, the foreperson wrote to the trial court and indicated that she might have reached a verdict of not guilty of voluntary manslaughter had she deliberated further. According to the juror, the jury compromised because the jurors were tired and were uncertain whether the trial court would have required them to deliberate during the evening and throughout the weekend to reach a verdict.

Defendant was sentenced on March 3, 1989. On March 6, 1989, a hearing was held on defendant's motion for dismissal or for a new trial. In an order dated August 4, 1989, the trial court denied defendant's motion.

I

Defendant first claims that the trial court erred in failing to order further deliberations by the jury when the foreperson expressed her doubts and that he is entitled to reversal of his voluntary manslaughter conviction.

MCR 6.420(C), which governs the acceptance of a verdict in a criminal case, provides:

> Before the jury is discharged, the court on its own initiative may, or on the motion of a party must, have each juror polled in open court as to whether the verdict announced is that juror's verdict. If polling discloses the jurors are not in agreement, the court may (1) discontinue the poll and order the jury to retire for further deliberations, or (2) either (a) with the defendant's consent, or (b) after determining that the jury is deadlocked or that some other manifest necessity exists, declare a mistrial and discharge the jury.

The comment prepared by the staff of the Supreme Court for Rule 6.420 notes:

> Subrule (C) is consistent with the jury polling procedure set forth in MCR 2.512, but is modified to address constitutional concerns applicable in criminal jury trials. See *People v Hall,* 396 Mich 650, 654-655 [242 NW2d 377] (1976).
>
> The option in subrule (C) permitting the court to "discontinue the poll and order the jury to retire for further deliberations" requires the court to cut off the polling as soon as disagreement is disclosed. The court should not allow the polling to continue because of its potentially coercive effect. Nor, for the same reason, should the court question the jury to determine where the jury stands numerically. See *People v Wilson,* 390 Mich 689 [213 NW2d 193] (1973).

If, when a jury is polled, one juror expresses disagreement with the verdict, the jury must be sent out for further deliberations. *People v Bufkin,* 168 Mich App 615, 617; 425 NW2d 201 (1988); *Wayne Co Prosecutor v Detroit Recorder's Court Judge,* 64 Mich App 408; 235 NW2d 799 (1975).

In *Bufkin, supra,* a juror responded, upon a poll of the jury that returned a verdict of not guilty, that the verdict was not her verdict. Defense counsel requested further deliberations, while the prosecutor argued that the court was required to declare a mistrial on the ground that the jury had revealed the state of its deliberations. The trial court did not accept the verdict and granted the mistrial. This Court reversed, holding that MCR 2.512(B)(3) expressly provides that the jury must be sent out for further deliberation and because there was no manifest necessity for the granting of a mistrial. The panel remanded for entry of an unconditional dismissal because the prohibition against double jeopardy barred retrial.

In *Wayne Co Prosecutor, supra,* a juror stated that she did not agree with the verdict upon the poll of the jury, which returned a verdict of not

guilty by reason of insanity. There, the trial court, over the prosecutor's objection, bound the juror to her previous vote, accepted the verdict, and discharged the jury. This Court reversed, finding that the trial court should have instructed the jury to deliberate further. In addition, the panel sua sponte declared a mistrial because the jury was unable to reach a verdict and remanded the case for a new trial.[2]

In the present case, the trial court clearly erred in accepting a verdict that was not unanimous. The trial court also erred in inquiring into the nature of the juror's doubt. Such an inquiry is impermissibly coercive. Cf. *People v Wilson,* 390 Mich 689; 213 NW2d 193 (1973) (trial court's inquiry into the numerical division of the jury is impermissibly coercive). The trial court should have instructed the jury to deliberate further upon the jury foreperson's expressed indecision with respect to the category of manslaughter. MCR 2.512(B)(3).

The prosecutor contends that a general verdict of manslaughter could properly be accepted because the manslaughter statute, MCL 750.321; MSA 28.553, provides for but one degree of manslaughter, and permits the same punishment for a conviction of voluntary or involuntary manslaughter. The prosecutor relies on *People v Fullwood,* 51 Mich App 476, 481; 215 NW2d 594 (1974), in support of his argument. In *Fullwood,* the Court stated:

> A general verdict of guilty is erroneous when the offenses charged are separate and distinct in character, provable by substantially different evi-

---

[2] In dissent, Judge MAHER stated that double jeopardy barred retrial because the discharge of the jury before the defendant's guilt or innocence was determined was equivalent to an acquittal.

dence, and punishable by different penalties. [51 Mich App 481.]

The Court held that a general verdict of first-degree murder was not erroneous because, even though the jury did not specify whether the defendant committed premeditated murder or felony murder, the evidence was sufficient to sustain a conviction under either theory. See also *People v Embree,* 68 Mich App 40; 241 NW2d 753 (1976).

In contrast to *Fullwood* and *Embree,* which were both first-degree murder cases, a general verdict of manslaughter would have been erroneous in this case. Although both voluntary and involuntary manslaughter involve the killing without malice of another, the offenses are separate and distinct, *People v Townes,* 391 Mich 578, 589; 218 NW2d 136 (1974), and, as stated in *People v Daniels,* 172 Mich App 374, 379-380; 431 NW2d 846 (1988), are provable by substantially different evidence:

> The manslaughter statute, MCL 750.321; MSA 28.553, incorporates two common-law categories of manslaughter, involuntary and voluntary. *People v Richardson,* 409 Mich 126, 134, n 8; 292 NW2d 332 (1980). These categories are distinguishable, each defining crimes originating out of circumstances often quite different from the other. *Id.,* p 136.
>
> On the one hand, involuntary manslaughter has been defined as
>
> "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." [*People v Scott,* 29 Mich App 549, 551; 185 NW2d 576 (1971), quoting *People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923).]

> The usual situations in which involuntary manslaughter arises are either when death results from a direct act not intended to produce serious bodily harm or when death results from criminal negligence. *Richardson, supra,* p 136. By contrast, voluntary manslaughter shares all the elements of murder except malice. Proof of provocation or other mitigating circumstances is necessary to return a verdict of voluntary manslaughter when there has been an intentional homicide. [Citations omitted.]

Clearly, voluntary manslaughter is an intentional killing (mitigated by heat of passion), whereas involuntary manslaughter is an unintentional killing. According to the prosecution's theory, the shooting was intentional and premeditated, whereas under the defense theory the shooting was unintentional and accidental.

Further, even though the maximum penalty for the two offenses is the same, the offenses are different with respect to the degree of culpability and the relative severity of the sentence. See *People v Abbett,* 199 Mich App 334, 340-341; 501 NW2d 177 (1993), rev'd on other grounds 443 Mich 863 (1993). Therefore, even if the evidence was sufficient to support either theory, it was error for the trial court to accept the verdict of voluntary manslaughter because the jury could have returned a verdict on either theory.

This case is distinguishable from *People v Johnson,* 187 Mich App 621; 468 NW2d 307 (1991), where the Court held that a trial court did not deny the defendant the right to a unanimous verdict by instructing a jury in a case involving second-degree murder that the jury need not unanimously decide whether the defendant acted with an intent to kill, an intent to inflict great bodily harm, or wanton and wilful disregard that the

natural tendency of his behavior was to cause death or great bodily harm. The Court noted:

> The alternate theories of a defendant's state of mind relate to a single element of a single offense. When a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory. [187 Mich App 629-630.]

In the present case, jury unanimity is required because voluntary and involuntary manslaughter have different elements and must be considered separate and distinct offenses. Moreover, unlike the statute defining second-degree murder, the manslaughter statute does not list alternative means of committing the offense.

II

Having concluded that the trial court erred in accepting the verdict of voluntary manslaughter, we must determine whether retrial of the charges is barred by the Double Jeopardy Clauses of the United States and Michigan Constitutions, US Const, Ams V, XIV; Const 1963, art 1, § 15, which prohibit a defendant from being placed twice in jeopardy. *People v Dawson,* 431 Mich 234, 250; 427 NW2d 886 (1988). An accused is placed in jeopardy as soon as the jury is selected and sworn. *Id.* at 251. If the trial court declares a mistrial after jeopardy has attached, the state is precluded from bringing the defendant to trial a second time, unless the defendant consented to the mistrial or the mistrial was of manifest necessity. *Id.* at 252-253. Manifest necessity is not a precisely defined concept, but is usually determined case by case

with reference to various factors, such as the failure to agree upon a verdict. *Id.*

Double jeopardy does not preclude retrial after discharge of a jury "for inability to agree, or for some other overruling necessity." *People v Duncan,* 373 Mich 650, 660; 130 NW2d 385 (1964); *People v Hall,* 396 Mich 650, 654-655; 242 NW2d 377 (1976). In *Hall,* the defendant claimed that his second trial violated the prohibition against double jeopardy because the first trial ended with a hung jury. There, the Court held that retrial was not barred because the trial court concluded that the jury was unable to agree on a verdict.

Here, even though the trial court erred in accepting the verdict of voluntary manslaughter, the jury did return unanimous partial verdicts of acquittal of first- and second-degree murder. Because a jury verdict of a lesser included offense represents an acquittal of the higher charge, *Green v United States,* 355 US 184; 78 S Ct 221; 2 L Ed 2d 199 (1957), retrial is barred on the charge of either first- or second-degree murder.

The next inquiry is whether retrial is also barred on the charge of voluntary manslaughter. The present case is similar to *Wayne Co Prosecutor, supra.* In both cases, the trial courts accepted the verdict and discharged the jury over the express disagreement of one of the jurors with the verdict upon being polled. In both cases, the trial courts should have instructed the jury to deliberate further or, in the alternative, determined whether there was a hung jury because the jury was unable to reach a verdict. In *Wayne Co Prosecutor,* the panel fashioned the following remedy:

It is obvious that we cannot instruct the jury to deliberate further. However, we can determine

that the jury could not reach a verdict and order a mistrial.

The Court hereby sua sponte declares a mistrial because the jury was unable to reach a verdict. The cause will be remanded to the trial court for a new trial. [64 Mich App 410.]

In this case, there is "manifest necessity" to declare a mistrial because the jury, which was not ordered to undertake further deliberations, was unable to reach a unanimous verdict. Further, defendant, in requesting a mistrial based on a lack of unanimity on the voluntary manslaughter verdict, consented to the remedy of a mistrial and remand for a new trial on the voluntary manslaughter charge. Cf. MCR 6.420(C), which provides that a trial court, with the defendant's consent, may declare a mistrial and discharge a jury if the jurors are not in agreement on the verdict. Hence, we sua sponte declare a mistrial and remand for a new trial on the charges of voluntary manslaughter and felony-firearm.[3]

We reject the prosecutor's contention that the verdict is void and that the proper remedy is to order a new trial on the original charge of first-degree murder. A void verdict is the same as if the jury returned no verdict at all. *People v Young,* 20 Mich App 211, 216; 173 NW2d 793 (1969). In this case, a unanimous jury concluded that defendant was guilty of manslaughter. The only question remaining was whether defendant was guilty of voluntary manslaughter or involuntary manslaughter. Although the verdict was improperly accepted as voluntary manslaughter, it was properly accepted as partial acquittals of the charges of first- and second-degree murder and as a guilty

---

[3] Although the jury returned a unanimous verdict of guilty of the felony-firearm charge, this conviction must be reversed because it was based on the underlying voluntary manslaughter conviction.

verdict of possession of a short-barreled shotgun. Because retrial on the murder charges is barred by double jeopardy, defendant may only be retried on the charges of voluntary manslaughter and felony-firearm.

### III

Defendant also claims, with respect to his conviction of possession of a short-barreled shotgun, that the trial court erred in failing to give the requested instruction on duress. We disagree. Defendant possessed the gun before the decedent's threatening conduct. Hence, defendant failed to present sufficient evidence establishing the defense of duress relative to the charge of possession of a short-barreled shotgun. *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975).

### IV

Defendant next contends that convictions of both felony-firearm and possession of a short-barreled shotgun violate the right to be free of double jeopardy.[4] We disagree. The Legislature intended to authorize multiple convictions for felony-firearm and possession of a short-barreled shotgun where the possession offense did not serve as the underlying felony for the felony-firearm conviction. *People v Walker,* 167 Mich App 377, 384-385; 422 NW2d 8 (1988).

### V

Defendant also claims that Judge Frank E.

---

[4] We need not address this issue in light of our reversal of defendant's conviction of felony-firearm. See n 2. However, inasmuch as the issue is likely to recur if defendant is again convicted of felony-firearm on remand, we are addressing the issue in the interest of judicial economy.

Jeanette, who presided over the trial, was not competent under the state constitution to preside because he was over the age of seventy at the time he was assigned to the case. We disagree.

This case was originally assigned to duly elected Macomb Circuit Judge Michael D. Schwartz. Because Judge Schwartz was conducting another trial, the case was assigned by the State Court Administrative Office to Judge Jeanette, who was seventy-nine years old at the time and was retired from the Macomb Circuit Court.

Defendant argues that the age limitation contained in Const 1963, art 6, § 19 should also apply to retired judges who perform specific assignments pursuant to Const 1963, art 6, § 23. We disagree.

Const 1963, art 6, § 19 provides:

> The supreme court, the court of appeals, the circuit court, the probate court and other courts designated as such by the legislature shall be courts of record and each shall have a common seal. Justices and judges of courts of record must be persons who are licensed to practice law in this state. No person shall be *elected* or *appointed* to a judicial office after reaching the age of 70 years. [Emphasis added.]

As originally enacted, Const 1963, art 6, § 23 stated:

> A vacancy in the elective office of a judge of any court of record shall be filled at a general or special election as provided by law. The supreme court may authorize persons who have served as judges and who have retired, to perform judicial duties for the limited period of time from the occurrence of the vacancy until the successor is elected and qualified. Such persons shall be ineligible for election to fill the vacancy.

Under this constitutional provision, a judicial vacancy could only be filled by election. See *Attorney General v Riley,* 417 Mich 119, 132-133; 332 NW2d 353 (1983). Further, this provision limited the Supreme Court, in the event of a vacancy, to "authorize" retired judges to assume temporary judicial duties until an elected successor took office.

Const 1963, art 6, § 23 was amended, effective September 21, 1968, to provide:

> A vacancy shall occur in the office of judge of any court of record or in the district court by death, removal, resignation or vacating of the office, and such vacancy shall be filled by appointment by the governor. The person appointed by the governor shall hold office until 12 noon of the first day of January next succeeding the first general election held after the vacancy occurs, at which election a successor shall be elected for the remainder of the unexpired term. Whenever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law. *The supreme court may authorize persons who have been elected and served as judges to perform judicial duties for limited periods or specific assignments.* [Emphasis added.]

Unlike the original version, the amended provision does not limit the Supreme Court to authorize a retired judge to perform judicial duties only where a judicial vacancy occurs. Rather, the amended version provides a broader (and different) mandate to the Supreme Court that is not tied to judicial vacancies but rather allows the Court to designate retired judges for limited judicial duties or specific assignments. Under the amended version, such vacancies may only be filled by appointment by the Governor. See also MCL 600.226;

MSA 27A.226, as amended by 1987 PA 225, effective December 28, 1987, which parallels the change in Const 1963, art 6, § 23 to allow the Supreme Court to authorize retired judges to perform judicial duties in the absence of a judicial vacancy. See also MCL 600.557, 600.557a, 600.557b; MSA 27A.557, 27A.557(1); 27A.557(2).

Defendant contends that the words "appoint" and "assign" as used in § 19 and § 23, respectively, are interchangeable. *The Random House College Dictionary, Revised Edition* defines "appoint" to mean "to name or assign to a position, office, or the like; designate: *to appoint a judge to the bench.*" "Assign" is defined as: 1. "to designate, give, or reserve (something) for a specific person or purpose." 2. "to appoint, as to a post or duty: *Assign him to guard duty.*" Although both terms generally mean the same thing, they are normally not used interchangeably. Whereas "appoint" is used to refer to designations to positions or offices, "assign" generally refers to designations to perform certain or specific tasks.

Further, there is support for a difference in meaning between these two terms in light of the fact that neither the original nor the amended version of § 23 permits the Supreme Court to appoint judges. Rather, § 23 only allows the Supreme Court to "authorize" former (elected) judges to perform temporary judicial duties.

Given the varying ways in which one may achieve judicial power in Michigan, there is no compelling reason for the age limitation set forth in § 19 to apply equally to § 23. Section 23 does not contain an age restriction similar to that contained in § 19. Moreover, contrary to defendant's argument, to hold that the age limitation does not apply to § 23 does not render meaningless the age limitation provision in § 19. The two constitutional

provisions address different exercises of judicial power. In addition, the Supreme Court's longstanding practice of designating retired judges for temporary judicial duties or specific assignments argues against an extension of the decision in *Ball v Trenton City Clerk*,[5] 1 Mich App 1; 133 NW2d 218 (1965), to judicial assignments under § 23.

Given the foregoing analysis, we conclude that the age limitation in art 6, § 19 is applicable only to election or appointment to judicial positions under § 19, and not to assignments by the Supreme Court under § 23. Hence, Judge Jeanette was qualified under the constitution to preside over defendant's trial.

## VI

In light of our resolution of this matter, we need not address defendant's issues that are unique to his first trial.

Defendant's conviction of possession of a short-barreled shotgun is affirmed. Defendant's convictions of voluntary manslaughter and felony-firearm are reversed. The matter is remanded for a new trial on the charges of voluntary manslaughter and felony-firearm.

---

[5] In *Ball v Trenton City Clerk,* on which defendant relies, this Court held that this constitutional provision clearly and unambiguously stated that judges of courts of record must be licensed to practice law within the state and that no person shall be *elected* or *appointed* to judicial office after reaching the age of seventy years. This Court further held that the age limitation applies to all judicial positions, including the office of municipal judge.