108 P.3d 400

STATE of Idaho, Plaintiff–Respondent,

v.

Jaime SULEZ aka Espinoza,
Defendant–Appellant.

No. 30042.

Court of Appeals of Idaho.

Nov. 12, 2004.

Review Denied March 14, 2005.

Molly J. Huskey, State Appellate Public Defender; Justin Michael Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Melissa Nicole Moody, Deputy Attorney General, Boise, for respondent.

LANSING, Chief Judge.

Jaime Sulez appeals from the judgment of conviction and sentences entered after a jury found him guilty of two counts of lewd conduct with a minor under sixteen. Sulez contends that the district court erred in denying his motion for a new trial because the jury was not unanimous in its verdict. He also argues that his sentences are excessive.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Sulez was tried on two charges of lewd and lascivious conduct with a minor under sixteen, Idaho Code § 18–1508, for acts committed upon his teenage daughter. The jury found him guilty on both counts. Sulez then filed a motion for a new trial, arguing that the jury verdict was not unanimous. According to two affidavits filed in support of the motion, one from Juror No. 127 and one from defense counsel, when Juror No. 127 was polled following announcement of the verdict, she was shaken and upset and hesitated before responding. When asked if she agreed with the verdict, she eventually said "yes," but shook her head from side to side as if to say "no." The affidavit of Juror No. 127 also stated that she did not believe that Sulez was guilty, but that she thought she was following the judge's instructions when she voted for a guilty verdict.

The trial court denied the motion for a new trial and later sentenced Sulez to concurrent unified sentences of twenty-five years, with ten years determinate. The court declined to reduce the sentences when Sulez filed a motion for reduction pursuant to Idaho Crim-

inal Rule 35. On appeal, Sulez challenges the denial of his motion for a new trial and the sentences.

## II.

## ANALYSIS

### A. Motion for New Trial

■ Idaho Code § 19–2406(6) provides that a new trial may be granted when the verdict is contrary to the law or the evidence. Sulez asserts that the verdict in his case did not conform to the law because it was not unanimous, as required by I.C. §§ 19–2316 and 19–2317 and Idaho Criminal Rule 31.[1] Idaho Code § 19–2316 provides that if the jury is polled and one or more jurors do not respond affirmatively when asked whether the announced verdict is their verdict, "the jury must be sent out for further deliberation." Section 19–2317 likewise provides that if any juror expresses disagreement with the verdict, the jury must again be sent out, but if no disagreement is expressed, the verdict is complete and the jury must be discharged. Idaho Criminal Rule 31 requires a unanimous verdict in criminal cases and authorizes the court either to direct the jury to retire for further deliberations or to discharge the jury if polling discloses that there is not unanimous concurrence in the verdict. Sulez contends that in his trial a lack of unanimity was demonstrated by Juror No. 127 shaking her head when she voiced her assent to the verdict.

■ A trial court's ruling on a motion for a new trial is ordinarily reviewed for an abuse of discretion. *State v. Cantu,* 129 Idaho 673, 674, 931 P.2d 1191, 1192 (1997); *State v. Lankford,* 116 Idaho 860, 873, 781 P.2d 197, 210 (1989); *State v. Scroggins,* 110 Idaho 380, 384, 716 P.2d 1152, 1156 (1985). This standard ordinarily requires that we examine whether the trial court recognized that the issue was one calling for an exercise of dis-

cretion, acted within the boundaries of its discretion, and reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); *State v. Curtiss,* 138 Idaho 466, 468, 65 P.3d 207, 209 (Ct.App.2002). In the present appeal, however, Sulez has not provided this Court with a transcript of the court's ruling at the hearing on his motion for a new trial, and the district court apparently issued no written decision explaining its ruling. The trial court's reasoning therefore is not in the appellate record for our examination. Missing portions of an appellate record are presumed to support the decision of the trial court. *State v. Longoria,* 133 Idaho 819, 823, 992 P.2d 1219, 1223 (Ct.App.1999); *State v. Beck,* 128 Idaho 416, 422, 913 P.2d 1186, 1192 (Ct.App.1996). Consequently, Sulez can succeed on appeal only by showing that on the record and the evidence supporting his motion, he was entitled to a new trial as a matter of law.

Sulez has not met this burden. The two cases he relies upon to support his position are not apposite. In *People v. Bennett,* 154 Ill.App.3d 469, 107 Ill.Dec. 431, 507 N.E.2d 95 (1987), a juror, during polling, stated that she was "not sure" whether it was her verdict. In *People v. Booker,* 208 Mich.App. 163, 527 N.W.2d 42 (1994), a juror expressed his uncertainty as to the voluntary manslaughter verdict by stating "I have a doubt. I think that it could possibly be involuntary manslaughter." *Id.* at 45 n. 1. In both of these cases, the reluctant juror later informed the court that the juror agreed with the verdict, and judgment was then entered. On appeal, both convictions were reversed because the verdicts were not shown to be unanimous given the jurors' equivocation. *Bennett,* 107 Ill.Dec. 431, 507 N.E.2d at 100; *Booker,* 527 N.W.2d at 46. These cases differ significantly from the case before us because in *Bennett* and *Booker,* the jurors stat-

---

1. The information in Juror No. 127's affidavit regarding her thought processes concerning the verdict is inadmissible under Idaho Rule of Evidence 606(b), which precludes consideration of a juror's oral or written testimony as to "the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict … or concerning the juror's mental processes in connection therewith." Accordingly, we direct our attention only to the evidence concerning the juror's physical appearance during the polling, including the physical gesture of shaking her head as if to say "no" while verbally responding "yes."

ed aloud that they were unsure about the verdict. Their equivocation was obvious to the trial courts and put the courts on notice of a problem. The trial courts therefore had an opportunity to respond by directing the jury to continue with deliberations. In Sulez's case, when Juror No. 127 was polled, she orally responded that she agreed with the verdict. Defense counsel did not object to the acceptance and recordation of the verdict despite his allegedly having seen Juror No. 127 shake her head from side to side, and there is no indication in the record that the trial court was aware of Juror No. 127's alleged ambiguous gesturing until a motion for a new trial was filed days after the return of the verdict. At that point, the trial court no longer had the opportunity to seek clarification of the juror's response or to direct the jury to continue deliberations. Because no verbal disagreement with the verdict had been expressed, the verdict had been recorded and the jury dismissed.

Even if the trial court did see the juror's gesture, it would not necessarily convey to the court that the juror disagreed with the announced verdict. As the State has pointed out in its brief, "If a juror shakes his/her head while simultaneously voting 'guilty,' the head shaking could indicate disbelief or shock at the depraved nature of the crime or awe at the seriousness of the conviction. Head shaking could reveal the frustration of a juror who voted 'guilty' at the outset of deliberations and feels angry at the hours spent deliberating." In this regard, the case is analogous to *United States v. Aimone*, 715 F.2d 822 (3rd Cir.1983), where one juror, although answering "yes" to the query whether she agreed with the verdict, put her hands in the air and shrugged and was crying and shaking her head. The trial court declined defense counsel's request that the court interview the juror. The court said, "The poll did not reveal the juror's uncertainty with the verdict. Although Juror No. 4 made certain gesticulations at the time she indicated her agreement with the verdict, the court cannot conclude that those gestures indicated uncertainty with the decision." *Id.* at 831. The Third Circuit Court of Appeals found no error in the trial judge's decision, stating that the appellate court "must rely upon the trial judge's appraisal of the circumstances." *Id.* at 832. As noted above, because Sulez has not provided a transcript of the hearing on his motion for a new trial in the record on appeal, we do not have the benefit of any rationale that the trial court may have given for its ruling, including whether the trial court saw the head shaking behavior of Juror No. 127 and, if so, how the trial court interpreted the behavior. On this record, Sulez has not shown that he was entitled to a new trial as a matter of law.

## B. Sentence

 Sulez also contends that his concurrent twenty-five-year sentences with ten-year minimum terms are excessive and should have been reduced in response to his motion. Where a sentence is within the statutory limits, it will not be disturbed on appeal absent an abuse of the sentencing court's discretion. *Hedger*, 115 Idaho at 604, 768 P.2d at 1337. We will not conclude on review that the sentencing court abused its discretion unless the sentence is unreasonable under the facts of the case. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). In evaluating the reasonableness of a sentence, we consider the nature of the offense and the character of the offender, applying our well-established standards of review. *See State v. Hernandez*, 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct.App.1991); *State v. Lopez*, 106 Idaho 447, 449–51, 680 P.2d 869, 871–73 (Ct.App.1984).

Here, information before the court at sentencing and when acting upon Sulez's Rule 35 motion indicated that Sulez engaged in sexual intercourse with his daughter numerous times when she was age thirteen to fifteen. Although Sulez did not have a lengthy criminal record, he had a history of violence, including an aggravated assault conviction for threatening his wife with a firearm. He also had a history of violating no contact orders. In the sentencing proceedings, Sulez did not evidence any understanding of the harm that he had inflicted upon his daughter nor express remorse for his crimes. A psychosexual evaluation conducted for sentencing purposes yielded a diagnosis of sadistic personality disorder and anti-social personal-

ity traits. The evaluator opined that Sulez had poor motivation for treatment and should be considered a medium-high risk to violently or sexually reoffend. On this record, we find no abuse of discretion in the sentences imposed, or in the court's refusal to reduce the sentences pursuant to Rule 35.

### III.

### CONCLUSION

We conclude that the trial court neither erred in denying Sulez's motion for a new trial nor abused its discretion in sentencing Sulez and denying his Rule 35 motion. Accordingly, the judgment of conviction and sentence, and the order denying Rule 35 relief, are affirmed.

Judge PERRY and Judge GUTIERREZ concur.

