*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DERRICK DEVON DURHAM,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2023

No. 362034
Wayne Circuit Court
LC No. 19-001169-01-FC

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of second-degree murder, discharge of a firearm from a motor vehicle causing death, felon in possession of a firearm ("felon-in-possession"), and three counts of possession of a firearm during the commission of a felony ("felony firearm"). The trial court sentenced defendant as a third-offense habitual offender to serve concurrent prison terms of 66 to 100 years for the murder conviction, 30 to 60 years for his conviction of discharging a firearm from a vehicle causing death, 5 to 10 years for the felon-in-possession conviction, and 2 years for each of the felony-firearm convictions, the latter to be served concurrently with each other but consecutively with the sentences for their respective underlying felonies. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's convictions resulted from the fatal shooting of three-year-old Christian Miller, who was a passenger in the backseat of a vehicle driven by Charmaine Strickland. At the time of the shooting, defendant was driving a vehicle owned by Jena Ewais, who was sitting as a passenger, as they drove around to make drug sales. Ewais testified that Strickland was stopped behind defendant at a red light and honked her car horn at defendant when he did not immediately proceed when the light turned green. Both vehicles turned left onto a freeway service drive, after which Strickland drove around defendant and entered the freeway before him. Once on the freeway, defendant pulled alongside Strickland, whom she saw raise his arm and then heard her back window break. Ewais testified that defendant had retrieved his gun from a cup holder, told

-1-

her to recline, and reached across her to fire the gun into the back driver's-side door of Strickland's vehicle.

The back windows of Strickland's vehicle were tinted and opaque and concealed Miller's presence in the back seat. Miller died despite efforts to revive him. Over the next few days, Ewais and defendant attempted to clean their vehicle of evidence and change its appearance, before hiding it in an acquaintance's garage. Soon after Ewais learned that Miller had been shot and killed, she consulted a lawyer, who assisted her in reporting the events to law enforcement. Defendant surrendered himself to the police after learning that there was a warrant for his arrest.

Defendant was convicted of second-degree murder, MCL 750.317, discharge of a firearm from a motor vehicle causing death, MCL 750.234a(1)(d), felon in possession of a firearm, MCL 750.224f, and three counts of possession of a firearm during the commission of a felony, MCL 750.227b. Defendant was sentenced as previously noted, and this appeal followed.

## II. INVOLUNTARY MANSLAUGHTER INSTRUCTION

On appeal, defendant first argues that the trial court abused its discretion when it denied his request to instruct the jury on the lesser offense to his murder charge of involuntary manslaughter. Defendant contends that the evidence supported the theory that defendant shot at Strickland's vehicle in an effort to frighten and intimidate her but did not intend to shoot anyone. We disagree.

### A. STANDARD OF REVIEW

This Court reviews the trial court's "determination whether a jury instruction is applicable to the facts of the case" for an abuse of discretion. *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012).

### B. ANALYSIS

Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id.* There must be evidence to support jury instructions about the "elements of the charged offenses and material issues, defenses, and theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413.

A lesser-offense instruction is proper where "the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v McGhee*, 268 Mich App 600, 607; 709 NW2d 595

(2005) (quotation marks and citation omitted). There is no dispute that manslaughter is a necessary lesser included offense in relation to second-degree murder. *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). Thus, we agree with defendant to the extent that it would have been appropriate for the trial court to instruct the jury on involuntary manslaughter if a rational view of the evidence supported the instruction, which we turn to next.

Involuntary manslaughter has been defined as the "unintentional killing of another" with a "specified culpable act or mental state," including "a causation component." *People v Tims*, 449 Mich 83, 94; 534 NW2d 675 (1995). "The usual situations in which involuntary manslaughter arises are either when death results from a direct act not intended to produce serious bodily harm or when death results from criminal negligence." *People v Booker*, 208 Mich App 163, 171; 527 NW2d 42 (1994).

In this case, an involuntary manslaughter instruction would be appropriate "if a rational view of the evidence would have supported a finding" that Miller's death was caused "by an act of gross negligence or an intent to injure, and not malice." *People v Gillis*, 474 Mich 105, 138; 712 NW2d 419 (2006) (quotation marks and citation omitted). In discussing defendant's request for the instruction, the trial court thoughtfully considered whether the instruction was warranted given the facts of the case as compared with the intent required for the manslaughter instruction, stating:

> [T]he witness that was in the car with the Defendant . . . said the Defendant said something to the effect of went too far, or that was too much, and asked her to put down the window and pointed the gun out the window, and [shot] the gun at the vehicle.
>
> Whether he was intending to aim at the driver and missed because it is a moving car, I don't know what his intent was, but that is up for the jury to decide whether his actions constituted both the second and third prong of the second-degree murder statute, or if he actually intended to kill her and find him guilty of the murder 1. But, I don't believe that the involuntary manslaughter instruction was appropriate in this case based on what I heard in the prior trial, if it's different at this trial, I'll consider argument with regard to that, but I don't believe it's appropriate based on what I heard in the initial trial.

The specific acts and mental states causing an unintentional killing constituting involuntary manslaughter include "some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *Booker*, 208 Mich App at 170 (citations omitted). Involuntary manslaughter on the basis of criminal negligence, as alleged here, occurs when a "defendant either intended to inflict some bodily injury on another," or acted with gross negligence, which is acting "carelessly in such a manner that manifests a reckless disregard for another's life." *People v Holtschlag*, 471 Mich 1, 19; 684 NW2d 730 (2004). In order to establish involuntary manslaughter, the prosecutor would have had to prove that defendant committed a homicide "with a lesser *mens rea* of gross negligence or an intent to injure, and not malice." *Gillis*, 474 Mich at 138. Second-degree murder, on the other hand, requires proof of "(1) a death, (2) the death was

caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). A defendant acts with malice when acting with "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Henderson*, 306 Mich App 1, 9-10; 854 NW2d 234 (2014) (quotation marks and citation omitted).

With regard intent in this case, the evidence supported the conclusion that defendant shot Miller "in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Henderson*, 306 Mich App at 10. The evidence supported the finding that defendant pointed and shot his gun at the back, driver-side door of Strickland's vehicle, killing Miller, who was sitting in the adjacent seat. Although there was no evidence that defendant could see Miller through the tinted windows, that the back seat was occupied was a real possibility that should have been obvious to any reasonable person. Further, the testimony indicated that the shooting occurred as retaliation after Strickland honked at defendant at the stoplight because he did not promptly respond to a green light.

Because the intent to kill may be inferred from the use of a deadly weapon, defendant's use of a gun in this instance is evidence of his malicious intent. See *Henderson*, 306 Mich App at 110. A jury may also infer malice from evidence "that a defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Stiller*, 242 Mich App 38, 43; 617 NW2d 697 (2000). That defendant wantonly and willfully disregarded the obvious possibility that shooting at the backseat window of another vehicle would cause great bodily harm or death was amply supported by the evidence. Defendant intentionally aimed and shot his gun in anger at Strickland's vehicle while both were driving on a freeway, without concerning himself with who was in the back seat where his gun was pointed. The evidence did not support the conclusion that defendant's actions were merely negligent or careless, given the fatal consequences of discharging a gun at an occupied vehicle in freeway traffic. Accordingly, the evidence did not support defendant's theory that Miller's death was not the result of malicious action. When defendant decided to tell Elweis to move and roll down the window so he could shoot at Strickland's car, he acted with a reckless disregard for the obvious possibility that he would strike someone in the vehicle. Thus, the trial court did not abuse its discretion when it concluded that the evidence did not support an involuntary manslaughter instruction, and we affirm defendant's convictions.

III. SENTENCING

Next, defendant argues that his within-guidelines sentences for murder and discharging a firearm were disproportionate to his crime. We disagree.

A. STANDARD OF REVIEW

Whether a sentence violated the principles of reasonableness under the proportionality test is reviewed for an abuse of discretion. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). An abuse of sentencing discretion occurs where the sentence imposed does not reasonably reflect the seriousness of the circumstances concerning the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

## B. ANALYSIS

The sentences defendant challenges were within the ranges recommended by the sentencing guidelines and, thus, there is a rebuttable presumption that they are proportionate. *People v Posey*, ___ Mich ___, ____; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 33-34. "Defendant bears the burden of overcoming the presumption." *Id*. at ___; slip op at 34.

In *Steanhouse*, this Court recited several factors bearing on the proportionality of a sentence:

> (1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's mis-conduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted).]

A trial court should also take "into account the nature of the offense and the background of the offender." *Id*. at 45 (quotation marks and citation omitted).

Defendant contends that the trial court should have sentenced him to a shorter period of incarceration because there was no evidence that he intended to shoot anyone, and thus his conduct underlying his second-degree murder conviction was not as severe as for someone convicted on the basis of an intent to kill. The trial court, however, acknowledged that defendant might not have had the intent to kill or do great bodily harm, and instead may have been properly convicted under the theory that he should have known that his actions would present a great risk of great bodily harm, all of which the trial court characterized as inexcusable. And defendant does not elaborate about why shooting with an intent to kill is a more severe crime than shooting while recklessly disregarding the great risk of causing at least serious bodily harm. The law treats the intent in both circumstances as sufficient for second-degree murder, and it is not apparent how defendant's actions of shooting blindly into the backseat of a car is somehow a mitigating factor concerning his sentence. For the offense of being cut off in traffic, defendant shot a firearm at an area of an occupied vehicle that had a real and obvious chance of containing a person. Rather than intending to kill *a specific person*, he disregarded the grave and obvious risk that he might kill *anyone* by shooting blindly at the backseat area.

Defendant also argues that the trial court put too much emphasis on the fact that the victim was a three-year-old child, focusing on the tragic result rather than the carelessness involved. Defendant is correct that the trial court addressed the tragedy of Miller's death in light of his age. However, the court emphasized that it based defendant's sentence on the offense and the offender, not on the victim, particularly emphasizing the fact that defendant had not rehabilitated himself after serving sentences for his earlier crimes. The court also remarked how "road rage" does not excuse murder, and how defendant failed to take responsibility by blaming Ewais for the shooting. Plainly stated, the trial court's discussion of Miller's age did not predominate as the reason for the sentence. Defendant also notes that his past crimes were property and drug related, except for a home invasion for which defendant accepted responsibility by pleading guilty. However,

-5-

defendant does not dispute the trial court's characterization of his lack of progress in complying with the law despite being sentenced to probation and attendant rehabilitation programs.

Defendant has not successfully rebutted the presumption that his within-guidelines sentence was proportionate. The sentence was reasonable in light of the seriousness of the offense, defendant's failure to take responsibility for the shooting, and his demonstrably poor potential for rehabilitation. The trial court's sentence, therefore, was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). For these reasons, defendant has not demonstrated that his challenged sentences were unreasonable or disproportionate to the circumstances of the offense and offender, and we affirm.

## IV. CRUEL OR UNUSUAL PUNISHMENT

Defendant argues, for the first time on appeal, that the sentence for his murder conviction violated his protection against cruel and unusual punishment under the Eighth Amendment of the United States Constitution. We disagree.

### A. STANDARDS OF REVIEW

Generally, the question of whether a sentence violated the prohibition on cruel or unusual punishment is reviewed de novo. *People v Stovall*, 510 Mich 301, 312; 987 NW2d 85 (2022). However, to preserve a challenge to the constitutionality of a sentence, the defendant must raise the claim in the trial court, which defendant did not do. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). Unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.*

### B. ANALYSIS

"[A] sentence within the guidelines range is presumptively proportionate." *Posey*, ___ Mich at ____; slip op at 34. And a sentence that is proportionate is not cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008); *People v Drohan*, 264 Mich App 77, 92; 689 NW2d 750 (2004). "In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011).

Defendant insists that the homicide underlying his convictions was less egregious than other second-degree murders resulting from an actual intent to kill, and compares his murder sentence to sentences for assault crimes. However, as discussed, there is little support for the theory that defendant's second-degree murder was less severe than other second-degree murders, given that defendant shot a firearm in anger and retaliation at an area of an occupied vehicle that obviously had the potential to contain a passenger. That the jury might have found defendant guilty on the basis of something less than an actual intent to kill or to do great bodily harm does

not make his second-degree murder conviction comparable to a mere assault crime. Moreover, defendant "concedes" that Michigan's penalty for second-degree murder is "substantially similar" to those in other states. For these reasons, and the reasons stated above concerning proportionality, defendant's sentence was not constitutionally excessive. *Powell*, 278 Mich App at 323; *Drohan*, 264 Mich App at 92.

## V. SPEEDY TRIAL

In his last argument on appeal, defendant contends that his right to a speedy trial was violated because he was arrested in January 2019 and was not tried until April 2022, and attributes the delay to the prosecutor. We disagree.

### A. STANDARDS OF REVIEW

This Court reviews de novo the constitutional question whether a defendant was denied the right to a speedy trial. See *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The trial court's factual findings are reviewed for clear error. *Id*. at 260. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019) (quotation marks and citation omitted).

### B. ANALYSIS

A guarantee of a "speedy and public trial" for a criminal defendant is found in both the United States and Michigan Constitutions, and in Michigan is enforced by "statute and by court rule." *Williams*, 475 Mich at 261, citing US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; MCR 6.004(A). The purpose of the speedy-trial guarantee is to "minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *People v Sierb*, 456 Mich 519, 531; 581 NW2d 219 (1998) (quotation marks and citation omitted). To determine whether a defendant has been denied the right to a speedy trial, a court should balance: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999) (quotation marks and citation omitted). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261. It is presumed that a defendant is prejudiced after a delay of 18 months, upon which "the burden shifts to the prosecution to show that there was no injury," which involves "an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Id*. at 262 (quotation marks and citation omitted).

In this case, defendant was arrested on January 30, 2019, and trial was set for July 29, 2019, but was adjourned to December 2019 in order to allow successor counsel to take over the defense. Defendant's first trial resulted in a hung jury because the jury was unable to reach a unanimous verdict. At a June 3, 2020 hearing, the trial court approved the withdrawal of defendant's appointed attorney who had succeeded retained counsel, and defendant stated that he would hire substitute counsel. The trial court explained that trials would resume in August 2020 after COVID-

19 restrictions were lifted and encouraged defendant to quickly retain counsel because his trial was "top priority."

Twelve days later, at a hearing on defendant's motions for release on bond or to dismiss, the trial court commented:

> [Defendant] has gone through many attorneys in this case. And the delays were attributable to the Defense because there were new defense attorneys coming on multiple times.
>
> And we had a . . . mistrial, and there was juror misconduct. That show-cause for contempt of court is still yet to be heard on the juror because of COVID.
>
> * * *
>
> And we had it scheduled for a new trial on June 8th, I believe was supposed to be the day, and we fixed an exception for a reasonable delay because . . . I can't imagine a more good cause than a worldwide pandemic that shuts down the court and shuts down everything.
>
> And . . . [MRC] 6.004 [implicates] good cause for a delay, and the worldwide pandemic. So I have to say [defendant] is the only in-custody case I have. So as soon as this can be trial ready, I can submit it to the trial docket to put it up for trial. So if you're not going to go with [newly appointed counsel], I recommend that you hire someone immediately so they can get up to speed and we can get it certified as ready so you can get a trial date as soon as possible . . . .

After defendant's retained counsel filed an appearance on July 22, 2020, and both parties reported at a September 18, 2020 hearing that they were not ready to try the case, the second trial began on April 13, 2022. Therefore, the time it took to conclusively try defendant was more than 38 months after his arrest.

The length of delay itself is not necessarily determinative of a speedy-trial violation. *Cain*, 238 Mich App at 112-113. In this case, the pretrial delay was long enough to establish the presumption that defendant was prejudiced if at least 18-months of the delay was attributable to the prosecution, which would then impose a burden on the prosecution to demonstrate that defendant was not harmed by the delay. See *Williams*, 475 Mich at 262; see also *People v Holtzer*, 255 Mich App 478, 492; 660 NW2d 405 (2003).

Defendant argues that the prosecution was responsible for apparently all the delays, but cites no specific instance of the prosecution's having sought any delay. And while the prosecutor is held accountable for unexplained or otherwise unattributable delays, *People v Lown*, 488 Mich 242, 261; 794 NW2d 9 (2011), when a defendant requests an adjournment, the delay is generally attributable to the defendant. See *Cain*, 238 Mich App at 113. Regarding the reasons for the delay in this case, it is undisputed that the COVID-19 pandemic was responsible for the majority of it. Another 10 months were consumed by the first trial, and a mistrial after a hung jury is normally viewed as neutral when attributing responsibility. See *Barker v Wingo*, 407 US 514, 531; 92 S Ct

2182; 33 L Ed 2d 101 (1972) (stating that "a valid reason . . . should serve to justify appropriate delay"). The trial court explained that some of the delay was also caused by defendant's changes in legal representation.

Miscellaneous delays and general docket congestion are inherent in the court system, and, even if they are "technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158, 167 (1997) (quotation marks and citation omitted). In *People v Franklin*, unpublished opinion of the Court of Appeals, issued December 21, 2021 (Docket No. 357557), pp 5-6,[1] this Court stated that the delay in complying with the 180-day rule from May 2020 until November 2020 "was excusable because it was the direct result of the restrictions imposed during the COVID-19 crisis, none of which are attributable to either party." We agree. In this case, the trial court properly did not hold the prosecutor responsible for the docket congestion and delays caused by COVID-19 safety protocols. As the trial court noted, the parties were waiting for public safety measures to permit the resumption of trials. The prosecutor had no avenue for bringing defendant to trial while orders suspending jury trials were in place and, therefore, is not responsible for the delay resulting from the need to protect the health of all trial participants. Additionally, the delay resulting from defendant's mistrial should not be imputed to the prosecutor because that trial took place in a timely manner, indicating the prosecutor's readiness for trial, and the mistrial did not result from any prosecutorial manipulation or other misconduct. Therefore, the delays from arrest to trial attributable to the earlier mistrial and COVID-19 restrictions accounted for 32 months of the 38-month delay, which are not imputed to the prosecutor.

But even if the prosecutor were responsible for the delay, defendant has not shown he was prejudiced by it. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). Prejudice to the person includes "oppressive pretrial incarceration" as well as "anxiety and concern of the accused." *Barker*, 407 US at 532. In this case, defendant argues that he suffered prejudice to his person because the longer period of incarceration exacerbated his hypertension, diabetes, and asthma, and exposed him to a COVID-19 infection.

Confinement in a populated and enclosed space likely increased defendant's exposure to COVID-19, and, of course, his liberties were constrained while he was incarcerated. However, the trial court denied defendant's request to be released on bail because his dangerousness was evident from the acts that resulted in his incarceration and from his failure to comply with the conditions of his earlier probation. Thus, any possible personal prejudice defendant experienced was attributable at least in part to defendant's own behavior that counseled against release on bond.

"In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994). "[I]n determining prejudice to a defendant, we do not look at how the prosecutor's case was improved during the delay, but to whether the defendant's defense was degraded." *Holtzer*,

---

[1] Although not binding, unpublished opinions from this Court may be considered for their persuasiveness. *People v Brcic*, 342 Mich App 271, 279 n 2; 994 NW2d 812 (2022).

255 Mich App at 494.  In this case, defendant generally asserts that the long delay might have diminished witnesses' memories.  However, defendant does not identify any potentially helpful testimony that was not presented at trial for that reason.  Nor does he explain why diminished memories disadvantaged the defense to a greater degree than they disadvantaged the prosecutor.  This Court has stated that general allegations of prejudice, such as witnesses' fading memories and financial burdens, "are insufficient to establish that he was denied his right to a speedy trial." *Gilmore*, 222 Mich App at 462.  Because defendant has not offered any basis for concluding that his ability to adequately prepare or present his defense was prejudiced by the delay, we conclude that the record does not indicate that defendant suffered any prejudice from the lengthy delay.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly